UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE HUMANE SOCIETY OF | ) | |
| THE UNITED STATES, | ) | |
| 2100 L Street, N.W., | ) | |
| Washington, D.C. 20037, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civ. A. No. 05-01089 (RMU) |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES | ) | |
| FOOD AND DRUG | ) | |
| ADMINISTRATION, | ) | |
| 200 Independence Avenue, S.W., | ) | |
| Washington, D.C. 20201, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MOTION FOR AN OPEN AMERICA STAY

Defendant Food and Drug Administration hereby moves for a stay of proceedings pursuant to Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976).  In support of this motion, Defendant respectfully submits the attached memorandum of points and authorities with supporting declarations (Attachments 1 and 2), and a proposed Order. Plaintiff has been consulted pursuant to LCvR 7(m) and has indicated it will oppose this motion. On July 8, 2005, Defendant filed an Unopposed Motion to Adopt Briefing Schedule, which is currently pending before the Court.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

_____

R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney


_____

HEATHER PHILIPS, CA Bar # 191620
Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
(202) 307-0258
FAX (202) 514-8780

OF COUNSEL:

PAULA M. STANNARD
Acting General Counsel

SHELDON T. BRADSHAW
Associate General Counsel, Food
and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation

MICHAEL SHANE
Associate Chief Counsel for
Enforcement
Office of the General Counsel
U.S. Department of Health and
Human Services

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE HUMANE SOCIETY OF | ) | |
| THE UNITED STATES, | ) | |
| 2100 L Street, N.W., | ) | |
| Washington, D.C. 20037, | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | Civ. A. No. 05-01089 (RMU) |
|       v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES | ) | |
| FOOD AND DRUG | ) | |
| ADMINISTRATION, | ) | |
| 200 Independence Avenue, S.W., | ) | |
| Washington, D.C. 20201, | ) | |
| | ) | |
|       Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR AN OPEN AMERICA STAY**

## I. INTRODUCTION

Defendant Food and Drug Administration ("FDA") moves this Court for a stay of proceedings pursuant to Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976). Plaintiff has submitted a Freedom of Information Act ("FOIA") request to FDA that seeks documents related to "FDA's guidance on potency testing of . . . BOTOX® (theraputic use) and BOTOX® Cosmetic (cosmetic use) . . . ." Pl.'s Comp. at ¶ 1. The documents were requested in order to "educate the public, and to assist [Plaintiff] in monitoring the use of animals in laboratories and the impact of the FDA's decisions on such use." Id. Although FDA is exercising due diligence in responding to Plaintiff's FOIA request, exceptional circumstances have prevented it from processing the request within the statutory time limit. Pursuant to 5 U.S.C. § 552(a)(6)(C), which provides for additional time under such

circumstances, the Court is requested to stay the proceedings until FDA is able to process

Plaintiff's request.

FDA has provided sworn declarations from Betty B. Dorsey, Director of the Division of

Freedom of Information ("DFOI"), Office of Management Programs, and Nancy B. Sager,

Director of the Division of Information Disclosure Policy ("DIDP"), Center for Drug Evaluation

and Research ("CDER"), which explain that FDA requires a stay of at least ten (10) months, or

until June 2006, to process Plaintiff's FOIA request.

## II. <u>STATEMENT OF FACTS</u>

### A.    <u>Factual Background</u>.

By letter dated April 9, 2004, the Humane Society of the United States (Plaintiff)

submitted a FOIA request to FDA.  Attachment 1 (hereinafter "Dorsey Decl.") at ¶ 4.  Plaintiff's

request sought documents "related to FDA's guidance on potency testing of the Botulinum toxin

type A, more specifically BOTOX® (theraputic use) and BOTOX® Cosmetic (cosmetic use),

manufactured by Allergan, Inc. of Irvine, CA."  <u>Id</u>.  DFOI logged in this request and assigned it

reference number 04-5590, reflecting that it was the 5,590th FOIA request FDA received during

the calendar year 2004.  <u>Id</u>.

On April 19, 2004, FDA notified Plaintiff by letter that the agency would respond to

Plaintiff's request "as soon as possible . . . ."  <u>Id</u>. at ¶ 5.  This letter also invited Plaintiff to

contact FDA at a phone number and address provided therein if Plaintiff had any questions

related to the request.  <u>Id</u>.

Given the size of the FDA and the vast number of documents generated in the ordinary

course of agency business, DFOI forwards requests made under the FOIA to those FDA offices that it determines are reasonably likely to possess responsive records.  Id. at ¶ 6.  In this case, because CDER has regulatory responsibility for BOTOX and BOTOX Cosmetic, DFOI immediately forwarded Plaintiff's request to DIDP, the division in CDER responsible for information disclosure.  Id. at ¶ 6; Attachment 2 (hereinafter "Sager Decl.") at ¶ 28.  DFOI also forwarded Plaintiff's request to the Director of Regulations and Policy of the Center for Food Safety and Applied Nutrition (CFSAN) because CFSAN's responsibilities include the regulation of cosmetics.  Dorsey Decl. at ¶ 6.

On April 21, 2004, DIDP received Plaintiff's request and assigned it to the "complex queue" which refers to the queue of requests that cannot  be answered quickly with readily available documents that require no redacting.  Sager Decl. at ¶¶ 8, 9, 28.  Plaintiff's request is still pending in DIDP's complex queue and will be processed as soon as it rises to the head of the queue.  Id. at ¶ 28.

On May 17, 2004, CFSAN sent Plaintiff copies of two documents maintained on FDA's website concerning the cosmetic use of Botulinum Toxin Type A.  Dorsey Decl. at ¶ 7.  CFSAN's cover letter to Plaintiff pointed out that "Botox Cosmetic is considered to be a drug.  The use of the word Cosmetic in the name of the drug does not refer to any cosmetic application but rather to the use of the drug for procedures known as cosmetic surgery."  Id.  Plaintiff was charged $9.60 for search and reproduction costs and informed that the total may not reflect the final charges associated with Plaintiff's request.  Id.  Because Plaintiff's request was still being processed by DIDP, CFSAN's May 17, 2004 response to Plaintiff did not reflect the FDA's final response to Plaintiff's request.  Id.

On July 29, 2004, DFOI received a letter from Plaintiff that again requested documents "related to the FDA's guidance on potency testing of the Butulinum toxin type A, more specifically BOTOX® (theraputic use) and BOTOX® Cosmetic (cosmetic use), manufactured by Allergan, Inc. of Irvine, CA." Id. at ¶ 8. Because the letter indicated that the Plaintiff had submitted a previous request for the same documents and had received a response from CFSAN, DFOI did not assign it a new reference number. Instead, it was considered to be a follow-up concerning the Plaintiff's original, pending request. Id. Plaintiff's July 26, 2004 letter was forwarded to DIDP because Plaintiff's original April 9, 2004 FOIA request was still pending in that office. Id.; Sager Decl. at ¶ 29.

By letter dated April 28, 2005, Plaintiff submitted a "Freedom of Information Act Appeal" to the Department of Health and Human Services wherein Plaintiff appealed the "constructive denial of a July 26, 2004 request" under FOIA. Dorsey Decl. at ¶ 9.

On May 5, 2005, the Department of Health and Human Services Public Health Service notified Plaintiff that its administrative appeal had been received and that it had been assigned number PHS-2K5-A-077. Id. at ¶ 10. On June 2, 2005, Plaintiff filed its Complaint in this case. To date, FDA has neither denied, nor issued to Plaintiff a letter denying, its request for records; Plaintiff's FOIA request is still pending at DIDP and will be processed when it rises to the head of the "complex" queue. Sager Decl. at ¶¶ 28, 40.

**B.  Factual Basis for Open America Stay.**

**1.  FDA Processing of FOIA Requests.**

All FOIA requests for FDA documents are received by FDA's main Freedom of Information office, DFOI. DFOI logs in each request, assigns it a number, and refers it to the

4

FDA components responsible for the relevant records.  Dorsey Decl. at ¶¶ 4, 6; Sager Decl. at

¶ 7.  CDER is the FDA center responsible for the regulation of most human drugs, and FOIA

requests sent to CDER are referred to DIDP.  Sager Decl. at ¶ 7.  DIDP has a staff of twenty-six

people, consisting of the Director, a Special Assistant, two team leaders, nine regulatory

counsels, four consumer safety officers (CSOs), one policy analyst, seven paralegals and FOIA

technicians, and one secretary.  DIDP also currently employs four full-time contractors to assist

in producing documents in litigation matters, reviewing documents, and processing FOIA

requests.  Id. at ¶ 6.

DIDP receives a constant stream of FOIA requests, many of which involve a voluminous

number of documents.[1]  To expedite its responses and use its resources in the most efficient

manner, DIDP classifies FOIA requests as "simple" or "complex" and assigns them to a

respective queue.  Id. at ¶¶ 8-10.   FOIA requests that can be answered quickly with readily

available documents that require no redacting are considered simple and generally are processed

on a faster track (the "simple queue"), as opposed to complex requests, which follow a more

deliberate track (the "complex queue"). Within each of the queues, DIDP generally processes

requests on a first-in, first-out basis.[2]  Id. at ¶ 8.

_____

[1]  For example, a FOIA request submitted on February 13, 2002, and assigned reference number 02-03279, sought documents concerning the drug Oxycontin.  After completing an exhaustive search, DIDP located approximately 10,000 pages of responsive documents, including: approval documents for the new drug application; correspondence pertaining to the FDA's review and approval of the drug; approval documents relating to various supplements to the manufacturer's drug application; and other correspondence between FDA and the manufacturer.  Id. at ¶ 10, n.2.

[2]  To promote efficiency in its operations, DIDP uses the following approaches in processing requests: (1) once a response to the oldest request for certain records comes to the top of the queue, responses to requests seeking closely related records are processed at the same

Generally, DIDP considers a request to be simple when it does not require DIDP to redact documents, usually because DIDP already has reviewed and redacted them,[3] the documents requested are publicly available, or it is apparent from the face of the request that the documents do not exist in CDER records. Id. at ¶ 9. Accordingly, DIDP's response to a simple queue FOIA request principally involves making copies of documents and providing them to the requester, directing the requester to publicly available information, or providing the requester with a statement that CDER does not have information responsive to the request. Id. at ¶ 11.

Any requests that are not considered simple are placed in the complex queue. If DIDP anticipates that a FOIA request in the complex queue will require extensive searches for numerous documents, then multiple individuals in DIDP are assigned to the request. Id. at ¶ 10. Complex requests that require this level of staffing often involve voluminous records and frequently necessitate extensive time for searching and redaction in order to prepare the records for release. Furthermore, such requests often require substantive input from supervisory staff to determine both the scope of the search and the ultimate releasability of the records. Id. For complex requests, DIDP may need to search, or direct the search of, numerous agency files.[4] Id.

_____

time; and (2) once a response to a request for certain records is complete, any other requests for the same records are then answered at that time, regardless of where the additional requests are in the queue. This means that some requestors may initially receive a partial response to their requests, but it permits DIDP to more effectively use its limited resources in providing at least some documents to other requestors. Sager Decl. at ¶ 10, n.3.

[3] Documents may fall into this category because the information has been assembled and redacted in response to a prior FOIA request or because the request involves a drug approval package that DIDP has processed in preparation for its posting on the FDA website. Sager Decl. at ¶ 9, n.1.

[4] For example, DIDP will have to coordinate a search of numerous files within CDER and CBER to gather the documents responsive to Plaintiff's FOIA request. Id. at ¶¶ 31-32.

6

at ¶ 12.  After the search has been carried out and the documents sent to DIDP, DIDP conducts a preliminary review of the records collected to verify that they are responsive to the request.  Id. DIDP then reviews the responsive documents page-by-page and line-by-line to determine whether any records can be released and whether any FOIA exemptions apply.  Id.  Exempt material is redacted.  Frequently, a team leader conducts a quality control review to ensure that the responsive documents have been properly prepared for public disclosure.  This review ensures that the FOIA exemptions have been properly applied, that no releasable material has been withheld, and that no material meriting protection has been released.  Finally, copies of the responsive documents are prepared and delivered to the requester.  Id.

If the documents are being prepared in response to a complex request that is the subject of litigation (such as Plaintiff's request), all responsive documents are bates-stamped and indexed before the review and redaction process begins.  After the review and redaction process is completed, DIDP staff update the index to reflect all redactions and the corresponding claims of exemption, and prepare a Vaughn index.  Id. at ¶ 13.

Because it is often inefficient to work on only one request at a time, DIDP personnel frequently work on two or more requests simultaneously.  The processing of a complex request may be delayed for a variety of reasons, including resolving the application of particular exemptions, locating missing records, or consulting with other agencies about the propriety of releasing certain information.  Id. at ¶ 14.  In the interest of efficiency during this waiting period, another request may be processed and, if completed, the responsive records will be released at that time.  Therefore, large requests often proceed alongside smaller requests in the complex queue, in an attempt to ensure that one requester does not consume a disproportionate share of

DIDP resources.  This approach likewise reduces the processing time for many FOIA requests.
Id.

       **2.  FOIA Workload.**

      FDA regulates more than $1 trillion of commerce each year involving drugs, foods, animal feeds, biologics, veterinary medicines, and medical devices.  Id. at ¶ 15.  A byproduct of the wide scope of FDA's jurisdiction is a massive volume of FOIA requests.  Id.  DIDP, just one component of FDA, received 6,690 FOIA requests in 2001, 5,628 FOIA requests in 2002, 5,310 requests in 2003, 5,156 requests in 2004,[5] and 2,420 requests through July 31, 2005.  Id. at ¶ 16.  In 2004, DIDP received an average of about 430 requests per month.  However, this figure does not reflect the size and complexity of the requests, and DIDP's resources were not sufficient to process as many requests as it received in 2004.  Id. at ¶ 17.  The vast majority of documents that are responsive to FOIA requests include information that is exempt from disclosure (for example, trade secret information, confidential commercial information, personal privacy and/or deliberative process information).  Id.  In addition, many of the FOIA requests that DIDP receives actually contain multiple requests for documents.[6]  Id.

      In addition, DIDP proactively reviews, redacts, and posts on FDA's website hundreds of thousands of pages of documents each year regarding newly approved drugs as part of FDA's

---

    [5]  In 2004, approximately twenty-five percent of all FDA FOIA requests were directed to DIDP.  Id. at ¶ 16.

    [6]  For example, a FOIA request submitted on April 7, 2005, and assigned reference number 05-5449, actually consists of twenty individual, itemized requests for documents.  Although the requests all relate to the same drug product, they each pertain to a specific subset of information relating to that drug product and there may be thousands of pages of information responsive to each of the twenty requests, which are nevertheless counted as one request for queue purposes.  Id. at ¶ 17.

compliance with the Electronic Freedom of Information Act Amendments ("EFOIA"), Pub.L. 104-231, § 8, codified at 5  U.S.C. § 552(a)(6)(E).  Id. at ¶ 19.  This effort requires considerable upfront resources from DIDP, but reduces the number of incoming FOIA requests each year.  Id. Currently, DIDP is also responsible for responding to four third-party subpoenas, three of which require substantial document production (and the remaining one which will require documents to be produced in the near future).  These court-required productions require a substantial time commitment by DIDP personnel.[7]  Id. ¶¶ 20-21.

      In recent years, DIDP has also seen a significant increase in the resources it devotes to document requests made by Congress, foreign, state and local governments, and other federal agencies.  Id. at ¶ 22.  These requests are not made under FOIA and are processed separate and apart from the FOIA queues.  As a result, fewer resources are available for responding to FOIA requests.[8]  One DIDP employee has been dedicated to responding to Congressional requests since August 2004, and DIDP has had to devote additional personnel resources on a number of occasions.  Id.

      In summary, DIDP's current workload includes: a stream of FOIA requests arriving at

_____

      [7] For example, in Robert L. Garber v. Pharmacia Corp., et al., Case No. 03- 1519 (D.N.J.), a third-party subpoena was served on FDA in June 2004 that requests eighteen categories of documents concerning the efficacy, gastrointestinal safety, or possible gastrointestinal side effects of Celebrex and any possible gastrointestinal advantages or disadvantages of Celebrex compared to other drugs, including all documents related to a study pertaining to Celebrex, several news and journal articles, government investigations, public statements, press releases, and news articles whether actual or contemplated, and any financial contracts or agreements.  Id. at ¶ 21.B.

      [8] For example, since August 2004, DIDP has produced to Congress over 100,000 pages relating to selective serotonin reuptake inhibitors (commonly referred to as "SSRIs"), COX-2 inhibitor drugs, and the participation by the elderly in clinical drug trials.  Id. at ¶ 22.

the approximate rate of 430 per month; four subpoenas; proactive postings pursuant to EFOIA;

and responding to documents requests made by Congress, foreign, state, and local governments,

and other government agencies.  This workload has resulted in substantial processing delays.  Id.

at ¶ 23.

### 3. Organizational Changes to Address Pending FOIA Backlog.

Because of the extraordinary demands on its resources, DIDP was unable to respond to

Plaintiff's FOIA request within the statutory time limit.  Id. at ¶ 24.  Despite issuing more than

5,900 FOIA responses in 2001, 4,900 responses in 2002, 4,300 responses in 2003, 6,800

responses in 2004, and 2,654 responses so far in 2005, DIDP has a backlog of approximately

4,800 FOIA requests.  Id. at ¶ 18.

DIDP has acted aggressively to reduce its FOIA backlog.  In June 2001, when DIDP had

approximately fifteen staff members (DIDP now has 26), DIDP was transferred from the CDER

Office of Training and Communications to the Office of Regulatory Policy to provide additional

visibility and additional resources and to increase overall efficiency.  Id. at ¶ 25.  DIDP received

additional funds in 2002 and hired another paralegal, a project specialist, a secretary, and seven

full-time contractors to help redact and produce documents for litigation and drug approval

packages for website posting.  Id.  Currently, DIDP has four full-time contractors.  Id.  Also in

2001, CDER implemented a new filing system known as the Division Files System ("DFS"), and

DIDP integrated DFS into its document retrieval function.  Id. at ¶ 26.  DFS eliminates the paper

document search for certain documents and instead allows electronic searches, and has reduced

the time required to process FOIA requests.  Id.

In September 2003, DIDP began implementing additional organizational changes to

further increase the efficiency of its operations, including establishing a three-team structure and analyzing and adjusting work loads. Id. at ¶ 27. DIDP also sought and obtained funding for an additional seven, full-time positions, which increased DIDP staffing by more than thirty percent from 2002 to 2003 and approximately doubled the DIDP staff from its 2001 level. Id. DIDP plans to hire approximately two more employees in the near future. Id. DIDP, which had 21 full-time employees before its September 2003 organizational changes, expects to have approximately 28 employees by December 2005.[9] Id. The organizational changes and increased staffing already have had a measurable impact on DIDP's FOIA request backlog, which has decreased approximately thirty percent, from an August 2003 high of 6,783, to the current backlog of approximately 4,800 requests. Id. DIDP expects that its ongoing process improvement activities and future hires will continue to reduce its backlog. Id.

### 4. Steps Required to Process Plaintiff's Request.

Plaintiff's request is in the complex queue. Id. at ¶ 28. Because DIDP follows a first-in, first-out process with regard to requests in the complex queue, DIDP has not yet begun to respond to Plaintiff's request. Id. at ¶¶ 8, 28. Once Plaintiff's request reaches the top of the complex queue, DIDP staff will locate responsive documents. Plaintiff's request will require agency staff to search the numerous volumes of documents in the Biologic License Application (BLA), supplemental BLAs, and Investigational New Drug Applications, for Botulinim Toxin Type A manufactured by Allergan, Inc. ("Allergan"). Id. at ¶ 31. There are hundreds of such

---

[9] Hiring of new employees generally does not immediately result in decreased processing times and decreased backlogs because, as a result of the extremely complex nature of the work and the analysis necessary to process FOIA requests, the average employee requires one to two years to become fully productive. Id.

volumes, with each volume expected to contain between 50 and 200 pages.  Id.  In addition to searching the volumes of documents of applications that have been approved, agency staff must search the volumes of documents for any applications that were not approved, were withdrawn, or are pending.  Id.  A search for the documents responsive to Plaintiff's request will be especially difficult because the responsibility for the regulation of most therapeutic biological products including BOTOX (Botulinum toxin type A) was transferred in October 2003 from FDA's Center for Biologics Evaluation and Research (CBER) to CDER.  Id. at ¶ 32.  Responsive documents may be present in both CBER and CDER; therefore, files in both centers will have to be searched.  Id.  Once Plaintiff's request rises to the head of the complex queue, DIDP estimates that it will require approximately one month to search for and locate all documents responsive to Plaintiff's request.  Id. at ¶ 31.

For complex requests that are involved in litigation, such as Plaintiff's, once DIDP has assembled all potentially responsive documents and files, it must review them to determine whether they are, in fact, responsive.  Id. at ¶ 33.  After all responsive documents are identified, DIDP will follow its standard procedure for complex litigation requests, including indexing and bates-stamping the documents; conducting a page-by-page, line-by-line review of the documents for applicable exemptions; redacting exempt portions of documents; quality control review; re-indexing the documents to incorporate asserted exemptions; and copying.  Id. at ¶ 34.

If any of the records are responsive, review and redaction may take a significant amount of time because many documents will most likely contain trade secret and/or confidential commercial information, as Plaintiff's request seeks documents related to FDA's guidance on the potency testing of BOTOX manufactured by Allergan, Inc.  Id. at ¶¶ 36-38.  The Federal Food,

Drug, and Cosmetic Act, on pain of criminal penalty, prohibits the release of trade secret

material to persons other than Department of Health and Human Services employees, to

Congress, or to the courts in cases brought under the Federal Food, Drug, and Cosmetic Act. 21

U.S.C. § 331(j).  In addition, the Trade Secrets Act prohibits the release of trade secret

information unless otherwise authorized by law.  See 18 U.S.C. § 1905.  Moreover, FDA

regulations provide that trade secret and privileged or confidential commercial information are

not available for public disclosure.  21 C.F.R. § 20.61.  Documents responsive to Plaintiff's

request relate to the chemistry, manufacturing, and controls of Allergan's Botulinim Toxin Type

A, and may contain significant amounts of trade secret and confidential commercial information.

Sager Decl. at ¶ 36.  Correspondence with Allergan, minutes of meetings and teleconferences

with Allergan, and FDA reviews of Allergan's Botulinim Toxin Type A application, are

examples of anticipated responsive documents likely to contain this protected type of

information.  Id.

    Plaintiff's request may also encompass documents that were prepared by FDA and that

relate to, among other things, the decision to recommend a particular method of potency testing.

Id. at ¶ 37.  The documents may contain extensive information that is exempt from disclosure

under the deliberative process privilege, which protects pre-decisional communications that are

part of a government agency's decision making process.  See 21 C.F.R. § 20.62.  DIDP redacts

deliberative process information from responsive documents before they are released, except in

those instances when FDA determines that waiver of this privilege is appropriate.  Sager Decl. at

¶ 37.  FDA intra-agency memoranda and e-mails are examples of anticipated responsive

documents likely to contain this protected type of information.  Id.

DIDP estimates that it will be at least eight (8) months before Plaintiff's FOIA request 04-5590 rises to the top of the complex queue, and that it will take at least two months thereafter to process the request (one month to search for and locate the documents and one month to review and redact the documents). Id. at ¶ 40.

### III.  ARGUMENT

#### A.    Legal standard for stay of proceedings.

An agency receiving a FOIA request generally must determine whether to comply with the request within 20 working days.  5 U.S.C. § 552(a)(6)(A)(i).  The court may, however, "allow the agency additional time to complete its review of the records" upon a showing that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request."  Id. § 552(a)(6)(C)(i).  This provision "was designed and inserted specifically as a safety valve for [FOIA]."  Open America, 547 F.2d at 610.

"[E]xceptional circumstances" include "any delays encountered in responding to a request as long as the agencies are making good-faith efforts and exercising due diligence in processing requests on a first-in, first out basis."  Appleton v. FDA, 254 F. Supp. 2d 6, 8-9 (D.D.C. 2003).  In addition, "exceptional circumstances" include delays encountered when an agency is "deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of . . . [5 U.S.C. § 552(a)(6)(A)], and when the agency can show that it is 'exercising due diligence'" in processing the requests.  Edmonds v. FBI, 2002 WL 32539613, at *1 (D.D.C. Dec. 3, 2002) (quoting Open America, 547 F.2d at 616).[10]

---

[10]  "Exceptional circumstances" permitting the granting of additional time do not include delays resulting from a "predictable workload" of FOIA requests, "unless the agency

14

The issuance of orders extending the time to respond to FOIA requests is not uncommon. See e.g., Piper v. United States Dep't of Justice, 339 F. Supp. 2d 13, 16 (D.D.C. 2004) (discussing a stay of two years given to the FBI); Appleton, 254 F. Supp. 2d at 11 (granting FDA's motion for stay pending completion of search and production of documents); Williams v. FBI, 2000 WL 1763680 (D.D.C. Nov. 30, 2000), at *3 (giving the FBI until May 2, 2001 to review records requested prior to August 21, 1998); Judicial Watch of Florida, Inc. v. United States Dep't of Justice, 102 F. Supp. 2d 6, 9 & n.1 (D.D.C. 2000) (discussing an order giving the FBI until June 8, 2000 to respond to a request dated July 15, 1997); Edmond v. United States Attorney, 959 F. Supp. 1, 4 (D.D.C. 1997) (giving the U.S. Attorney's Office until April 1, 1998 to respond to a request filed August 14, 1992); Rabin v. United States Dep't of State, 980 F. Supp. 116, 123-24 (E.D.N.Y. 1997) (granting motion for Open America stay and permitting Department of State over three years to process plaintiff's FOIA request); Jiminez v. FBI, 938 F. Supp. 21, 31 (D.D.C. 1996) (granting FBI's request for stay and permitting it over four years to respond to plaintiff's FOIA request); Ohaegbu v. FBI, 936 F. Supp. 7, 8-9 (D.D.C. 1996) (granting request for stay and permitting July 1997 response to FOIA request submitted in July 1995).

**B.    Exceptional circumstances exist and DIDP is exercising due diligence in responding to plaintiff's FOIA request.**

In this case, an order extending the time allotted to Defendant to respond to Plaintiff's request is fully warranted.  As explained in detail in the Sager Declaration, DIDP has an enormous workload, and its staff of twenty-six people is inundated with thousands of FOIA

---

demonstrates reasonable progress in reducing its backlog of pending requests."  5 U.S.C. § 552(a)(6)(C)(ii).

requests each year.  Sager Decl. at ¶¶ 15-16.  As noted, DIDP received 6,690 FOIA requests in

2001, 5,628 FOIA requests in 2002, 5,310 requests in 2003, 5,156 requests in 2004, and 2,420

requests so far in 2005.  Id.  DIDP's intense workload has also been exacerbated by an

exceptional burden of Congressional requests and litigation-related document productions.  See

Sager Decl. at ¶¶ 19-23.  For example, DIDP has produced over 100,000 pages of documents in

response to Congressional inquiries since August 2004 and has been served with four massive

third-party subpoenas. Id. at ¶¶ 21-22.  Furthermore, pursuant to EFOIA, DIDP has devoted

considerable resources to proactively reviewing, redacting, and posting on the FDA website

documents anticipated to be frequently requested, such as drug approval packages and warning

letters.  Id. at ¶ 19.

These demands certainly constitute the extraordinary circumstances envisioned by the

court in Open America.  See, e.g., Edmonds v. FBI, 2002 WL 32539613, at *2 (FOIA staff's

time spent on administrative appeals, litigation and "large projects" contributed to finding of

exceptional circumstances); Emerson v. CIA, No. 99-0274, 1999 U.S. District LEXIS 19511, at

*3, n.2 (D.D.C. Dec. 15, 1999)("unusual number of comprehensive Congressional requests"

alleged and considered as exceptional circumstances).

Despite this extraordinary workload, DIDP continues to conscientiously handle its large,

but diminishing, backlog of pending FOIA requests on a "first in/first out" basis.  See Appleton,

254 F. Supp. 2d at 9; Lisee v. CIA, 741 F. Supp. 988, 989 (D.D.C. 1990) (holding that agencies'

processing of FOIA requests on a first-in, first-out basis satisfied the "exceptional circumstance"

and "due diligence" requirements for stay).   Moreover, DIDP is making every effort to use its

limited resources to expedite each of the two queues established for processing the requests and

to further reduce its backlog.  See Sager Decl. at ¶¶ 24-27.  DIDP has been able to reduce the backlog of requests from 6,783 FOIA requests in August 2003 to its current level of approximately 4,800.  Id.  This decrease of approximately thirty percent in less than two years certainly demonstrate the "due diligence" described in Open America and Appleton.  Moreover, by reorganizing and increasing its staff and implementing an electronic document search system, DIDP not only has exercised "due diligence" in responding to the voluminous requests that it receives, but also has taken preemptive measures that will likely continue to reduce the backlog in the upcoming months.

**C.    Plaintiff has not demonstrated a genuine and urgent need for its request to be answered before others in DIDP's queue.**

Even if the elements for a stay under Open America are satisfied, a request for stay may be denied where the request is necessary and urgent.  Open America, 547 F.2d at 616; Ohaegbu v. FBI, 936 F. Supp. 7, 8 (D.D.C. 1996).   A plaintiff seeking to avoid the issuance of a stay "bears the burden of showing a genuine need and reason for urgency in gaining access to Government records ahead of prior applicants for information."  Edmond v. United States Attorney, 959 F. Supp. at 3 (citations and quotations omitted).  The requisite urgency has been established in only a few cases.  See Cleaver v. Kelley, 427 F. Supp. 80, 81-82 (D.D.C. 1976) (expedited processing appropriate where documents were needed at plaintiff's upcoming criminal trial).  Where the urgency has not been established, courts have repeatedly refused to permit claimants to leap to the front of agency queues.  Edmond v. United States Attorney, 959 F. Supp. at 3 (holding that plaintiff's claim that documents were needed to help him overturn a criminal conviction did not "warrant prioritization of his request over others which were filed earlier."); Ohaegbu v. FBI, 936 F. Supp. at 9 (noting that plaintiff must "wait his turn");

17

Schweihs v. FBI, 933 F. Supp. 179, 724 (N.D. Ill. 1996) (noting that plaintiff failed to state exceptional circumstances that warranted "vaulting" his request over other prior requests awaiting processing); Lisee v. CIA, 741 F. Supp. at 989 (finding no urgency where the requested information was needed to meet deadlines associated with writing and publishing a book).

Here, Plaintiff has shown no "urgent need" for the requested documents. Rather, as stated in Plaintiff's complaint, the Plaintiff wants information to "educate its members and the general public about the use, maintenance, and breeding of animals in research facilities" and to "educate members of the public regarding products, ingredients, and government activity that may be needlessly harming animals." Pl.'s Compl. at ¶ 4. While the information requested by Plaintiff may ultimately be useful to Plaintiff and help Plaintiff to pursue its organizational goals, there is no reason for the court to permit plaintiff to leap to the head of DIDP's complex queue, effectively bypassing all requesters who sought information before Plaintiff, simply because Plaintiff has filed a lawsuit. See Open America, 547 F.2d at 615 (cautioning that permitting requesters who file suit to "automatically go to the head of the line" would result in a system where "the regulation of priorities in all agencies . . . would very shortly become the function of the courts.").

## IV. CONCLUSION

In view of the foregoing, Defendant respectfully requests that an Order be issued staying all pending proceedings for ten (10) months or such further order as the Court may issue.[11]  A

---

[11] As Judge Leventhal noted in Open America, "there certainly is some room for a court in equity to stay its hand, and to forbear from enforcing a declared right in cases where the defendant is called upon to do the impossible." Open America, 547 F.2d at 620 (Leventhal, J., concurring). Perhaps recognizing this latitude, even courts (outside of this Circuit) which had held "that a great number of requests, insufficient funding, and inadequate staff do not constitute

proposed Order is attached.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN
DC BAR #451058
United States Attorney

_____

R. CRAIG LAWRENCE
DC Bar #171538
Assistant United States Attorney

_____

HEATHER PHILLIPS
CA Bar # 191620
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W., Rm E4412
Washington, DC 20530
(202) 307-0258

OF COUNSEL:

PAULA M. STANNARD
Acting General Counsel

SHELDON T. BRADSHAW
Associate General Counsel, Food
and Drug Division

ERIC M. BLUMBERG

_____

exceptional circumstances . . . [have not] . . . ordered immediate responses to the FOIA requests." Cohen v. FBI, 831 F. Supp. 850, 853 (S.D. Fla. 1993) (citations and quotations omitted).  See also Caifano v. Wampler, 588 F. Supp. 1392, 1394-95 (N.D. Ill. 1984) (no reasonable remedy to address violation of 10-day response limit or to vindicate requester's rights; court "can only direct that defendants continue to work diligently and expeditiously in a good faith manner to respond to Plaintiff's request").

Deputy Chief Counsel, Litigation

MICHAEL SHANE
Associate Chief Counsel for
Enforcement
Office of the General Counsel
U.S. Department of Health and
Human Services
5600 Fishers Lane, GCF-1
Rockville, Maryland 20857

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

THE HUMANE SOCIETY OF          )
THE UNITED STATES,             )
2100 L Street, N.W.,           )
Washington, D.C. 20037,        )
                               )
                 Plaintiff,    )
                               )          Civ. A. No. 05-01089 (RMU)
            v.                 )
                               )
UNITED STATES DEPARTMENT OF    )
HEALTH AND HUMAN SERVICES      )
FOOD AND DRUG                  )
ADMINISTRATION,                )
200 Independence Avenue, S.W., )
Washington, D.C. 20201,        )
                               )
                 Defendant.    )
_____)

**ORDER**

UPON CONSIDERATION of Defendant's Motion for an Open America Stay, it

is this ___ day of _____, 2005 hereby:

ORDERED that the Motion is GRANTED; and it is

FURTHER ORDERED that the Defendant shall, on or before June 30, 2006, provide the

Court with a status report concerning Defendant's processing of Plaintiff's request under the

Freedom of Information Act ("FOIA"), identified as request 04-5590.

SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE