UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF<br>THE UNITED STATES,<br>2100 L Street, N.W.,<br>Washington, D.C. 20037,<br><br>        Plaintiff,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES<br>FOOD AND DRUG<br>ADMINISTRATION,<br>200 Independence Avenue, S.W.,<br>Washington, D.C. 20201,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civ. A. No. 05-01089 (RMU)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR AN
OPEN AMERICA STAY AND OPPOSITION TO PLAINTIFF'S MOTION
FOR RELEASE OF NON-EXEMPT RECORDS**

**I. INTRODUCTION**

The government's opening brief, filed with the Court on August 12, 2005, established both prerequisites for a stay of proceedings pursuant to <u>Open America v. Watergate Special Prosecution Force</u>, 547 F.2d 605 (D.C. Cir. 1976). First, exceptional circumstances have prevented the United States Food and Drug Administration ("FDA") from responding to Plaintiff's pending Freedom of Information Act ("FOIA") request for documents related to FDA guidance on potency testing of BOTOX®, manufactured by Allergan, Inc. Second, FDA is exercising due diligence in processing Plaintiff's FOIA request, and will respond appropriately when the request reaches the top of the agency's FOIA queue. Furthermore, because Plaintiff has failed to demonstrate an urgent need for an immediate response to Plaintiff's request, it would be inappropriate for FDA to process Plaintiff's request out of order.

Ignoring the tremendous weight of authority supporting Defendant's request for an Open America stay, Plaintiff insists that its FOIA request should be answered immediately, and before other requests ahead of it in FDA's FOIA queue. In opposing Defendant's motion, Plaintiff argues that exceptional circumstances are absent because the agency's workload has remained "fairly constant" in recent years. This argument, however, fails utterly because FDA has presented ample evidence of its extraordinary workload as well as its successful efforts to reduce its significant backlog of requests. Plaintiff also claims that the FDA did not exercise due diligence because it did not ask Plaintiff for additional time to respond to Plaintiff's FOIA request and did not comply with statutory time frames. This argument is also deficient because such communication is not a prerequisite to obtaining an Open America stay. Furthermore, the section of the FOIA that permits the issuance of stays, 5 U.S.C. § 552(a)(6)(C), plainly contemplates that such requests will be submitted by agencies that have not complied with FOIA's statutory time frames. Moreover, FDA has adopted a "first in/first out" system of handling FOIA requests that offers fair and equal treatment of all requests received.

Finally, to the extent Plaintiff has submitted a motion that seeks an immediate release of documents, this request should be denied because Defendant meets the criteria for an Open America stay and Plaintiff does not satisfy the criteria for expedited review of its FOIA request.[1]

---

[1] The facts relevant to Defendant's motion for an Open America stay were set forth in Defendant's opening brief.

## II.  ARGUMENT

**A.     An Open America Stay Is Appropriate Because Exceptional Circumstances Exist and FDA Is Exercising Due Diligence in Responding to Plaintiff's FOIA Request.**

As fully explained in Defendant's motion for an Open America stay, an agency receiving a FOIA request generally must determine whether to comply with the request within 20 working days.  5 U.S.C. § 552(a)(6)(A)(i).  In situations where an agency has not complied with applicable time limit provisions, the court may "allow the agency additional time to complete its review of the records" upon a showing that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C)(i).  This provision "was designed and inserted specifically as a safety valve for [FOIA]."  Open America, 547 F.2d at 610.

"[E]xceptional circumstances" include "any delays encountered in responding to a request as long as the agencies are making good-faith efforts and exercising due diligence in processing requests on a first-in, first out basis."  Appleton v. FDA, 254 F. Supp. 2d 6, 8-9 (D. D.C. 2003).  In addition, "exceptional circumstances" include delays encountered when an agency is "deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of . . . [5 U.S.C. § 552(a)(6)(A)], and when the agency can show that it is 'exercising due diligence'" in processing the requests.  Edmonds v. FBI, 2002 WL 32539613, at *1 (D. D.C. Dec. 3, 2002) (quoting Open America, 547 F.2d at 616).

**1.     Nothing in Plaintiff's Opposition Negates the Government's Clear Showing of Exceptional Circumstances.**

Defendant's motion for an Open America stay established that FDA's Division of Disclosure Policy ("DIDP") has an enormous workload, and that its staff is inundated with

3

thousands of FOIA requests each year.  Defendant's August 12, 2005 Motion ("Def.'s Mot.") at 8 (citing Sager Decl. at ¶¶ 15-16).  Moreover, DIDP's intense workload has also been exacerbated by an exceptional burden of Congressional requests and litigation-related document productions.  Id. at 9 (citing Sager Decl. at ¶¶ 19-23).  For example, DIDP has produced over 100,000 pages of documents in response to Congressional inquiries since August 2004 and has been served with four massive third-party subpoenas.  Id. (citing Sager Decl. at ¶¶ 21-22).  Furthermore, DIDP has devoted considerable resources to proactively reviewing, redacting, and posting on the FDA website documents anticipated to be frequently requested, such as drug approval packages and warning letters.  Id. (citing Sager Decl. at ¶ 19).[2]  These tremendous demands readily meet the extraordinary circumstances requirement established by the court in Open America.  See, e.g., Edmonds v. FBI, 2002 WL 32539613, at *2 (FOIA staff's time spent on administrative appeals, litigation and "large projects" contributed to finding of exceptional circumstances); Emerson v. CIA, No. 99-0274, 1999 U.S. District LEXIS 19511, at *3, n.2 (D.D.C. Dec. 15, 1999) ("unusual number of comprehensive Congressional requests" alleged and considered as exceptional circumstances).

In an attempt to counter the government's clear showing of exceptional circumstances, Plaintiff points out that the number of FOIA requests received by DIDP has remained "fairly constant" in recent years.  Pl.'s Opp'n and Mot. at 12.  Although Plaintiff correctly notes that delays resulting from predictable agency workload cannot be characterized as "exceptional circumstances," Plaintiff fails to consider the full text of 5 U.S.C. § 552(a)(6)(C)(ii), which provides the following guidance regarding the existence of exceptional circumstances:

---

[2] As a result of these proactive efforts, numerous documents concerning the FDA's approval of BOTOX® and BOTOX® Cosmetic are currently available on FDA's website.  See http://www.fda.gov/cder/biologics/biologics_table.htm.

> For purposes of this paragraph, the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, <u>unless the agency demonstrates reasonable progress in reducing its backlog of pending requests</u>.

5 U.S.C. § 552(a)(6)(C)(ii) (emphasis added). As detailed in defendant's opening brief, DIDP's workload is by no means predictable. Indeed, while the <u>number</u> of requests appears relatively constant (averaging 430 per month), the complexity and consequential burdensomeness of FOIA requests vary enormously, and some requests received by DIDP can involve thousands of pages of documents. Def.'s Mot. at 8-9 (citing Sager Decl. at ¶¶ 15-23). Furthermore, DIDP's immediate workload and availability of staff are constantly varying due to the receipt of subpoenas and requests for information from Congress, both of which must be acted on immediately. Id. Accordingly, DIDP's workload is plainly not as constant or predictable as Plaintiff suggests.

Moreover, even if DIDP could be considered to have a "predictable workload" – and it does not – there can be no question that DIDP has made reasonable progress in reducing its backlog of pending requests. As explained in Defendant's motion for an <u>Open America</u> stay, DIDP has made several organizational changes and has increased its staffing to reduce its backlog of FOIA requests. Def.'s Mot. at 10-11 (citing Sager Decl. at ¶¶ 24-27). These changes have resulted in a measurable improvement on DIDP's FOIA request backlog, which has decreased approximately thirty percent, from an August 2003 high of 6,783, to the current backlog of approximately 4,800 requests. Id. Accordingly, DIDP's workload constitutes an "exceptional circumstance" under FOIA.

### 2.     Plaintiff's Attempt to Distinguish the Overwhelming Case Law Concerning Open America Stays is Unavailing.

Plaintiff devises an assortment of arguments to limit the substantial breadth of case law that supports Defendant's entitlement to an Open America stay.  First, Plaintiff asserts that several cases cited in Defendant's motion are distinguishable because the decisions did not explain why the Open America stays had been granted.  Pl.'s Opp'n and Mot. at 13.[3]   Although Plaintiff correctly points out that a few of the cases cited in Defendant's motion for stay did not contain a detailed analysis of the Open America standard, Plaintiff fails to mention that those cases were cited in a paragraph in Defendant's motion that merely noted the existence and length of Open America stays issued, as opposed to the reasons why such stays were issued.  See Def.'s Mot. at 15.  Cases concerning the specific components of the Open America analysis were cited in other sections of Defendant's motion where the elements were discussed.[4]

Next, in an attempt to erase over twenty years of jurisprudence, Plaintiff suggests that the Court should disregard cases that were decided before enactment of the Electronic Freedom of Information Act Amendments of 1996 (the "1996 Amendments").  Pl.'s Opp'n and Mot. at 13.  This suggestion, however, is strikingly misguided, and Plaintiff's failure to cite any authority in support of this contention is telling.  The 1996 Amendments did not overrule Open America, or create any sea change in how requests for stays are to be evaluated.  In fact, the

---

[3]  Plaintiff specifically points to three cases that were cited in Defendant's motion: Piper v. United States Dep't of Justice, 339 F. Supp. 2d 13, 16 (D. D.C. 2004); Williams v. FBI, 2000 WL 1763680 (D. D.C. Nov. 30, 2000); and Judicial Watch of Florida, Inc. v. United States Dep't of Justice, 102 F. Supp. 2d 6, 9 & n.1 (D. D.C. 2000).  Pl.'s Mot. at 13.

[4]  Furthermore, although Plaintiff argues that the Williams decision lacks an analysis of why the Open America stay was granted, even a cursory review of Magistrate Kay's decision reveals several pages of analysis concerning the applicable standards and basis for issuing the stay.  See Williams v. FBI, 2000 WL 1763680, at *2.

1996 Amendments merely clarified that the term "exceptional circumstances" did not include delay caused by a predictable agency workload of requests unless the agency demonstrates reasonable progress in reducing its backlog of pending requests. See Electronic Freedom of Information Act Amendments of 1996, Pub. L. No. 104-231, §7(c), 110 Stat. 3048 (codified as amended at 5 U.S.C. § 552(a)(6)(c)(ii)). See also Al-Fayed v. CIA, No. 002092, slip op. at 5 (D. D.C. Jan 16, 2001) ("Rather than overturn Open America, the 1996 amendments merely explain that predictable agency workload and a backlog alone, will not justify a stay."), aff'd on other grounds, 254 F.3d 300 (D.C. Cir. 2001).[5] Plaintiff's suggestion that pre-1996 Amendment cases no longer constitute valid legal authority flies in the face of numerous decisions issued by the various courts, including this Court's decision in Appleton, which noted that Open America "represents the law of the Circuit and has been applied to FOIA cases since the 1996 amendments." Appleton, 254 F. Supp. 2d at 9, n.3 (quotations omitted). Because acceptance of Plaintiff's argument would preclude consideration of numerous precedential cases decided before enactment of the 1996 Amendments, including Open America itself, Plaintiff's argument should be rejected.

Finally, Plaintiff attempts to broadly discount several Open America cases cited by the government because they involve FOIA requests submitted to the Department of Justice ("DOJ") instead of to FDA. Pl.'s Opp'n and Mot. at 14. While Plaintiff makes much of the fact that FDA received approximately one-third as many FOIA requests as DOJ (18,676 as opposed to 57,346), this fact has no legal significance. As previously discussed, the analysis of whether an agency is entitled to an Open America stay requires consideration of two factors: (1) whether exceptional

---

[5] A copy of the District Court's January 16 Order in Al-Fayed v. CIA is submitted as Attachment 1 to this brief.

circumstances exist, and (2) whether the agency is exercising due diligence in responding to the request. Nothing in the case law requires, or even contemplates, that an agency will be required to show a threshold number of FOIA requests in order to qualify for a stay. Nor does anything in the case law support the type of apples to oranges comparison proposed by Plaintiff. See Appleton, 254 F. Supp. 2d at 8-10.

By only highlighting the total number of requests received by DOJ and FDA, Plaintiff completely overlooks the fact that DOJ dwarfs FDA in terms of budget and total personnel. In fact, a review of publically available documents reveals that FDA's budget is approximately one-tenth of DOJ's budget, and FDA has approximately one-tenth the number of employees.[6] Given the full picture, one would expect FDA to have received one-tenth the number of requests (or approximately 5,700 requests). As Plaintiff points out, however, FDA received over 18,000 requests. Thus, to the extent the data cited by Plaintiff show anything, they merely establish that FDA receives a disproportionately high number of FOIA requested compared to DOJ.

### 3. Nothing in Plaintiff's Opposition Negates the Defendant's Showing of "Due Diligence."

As detailed in Defendant's motion for stay, DIDP's staff of twenty-six people continues to process a large, but diminishing, backlog of FOIA requests on a first-in, first-out basis despite an extraordinary workload. Def.'s Mot. at 4-11 (citing Sager Decl. at ¶¶ 8-27). As this Court recognized, DIDP's first-in and first-out processing of requests demonstrates the requisite due

---

[6] DOJ's 2005 budget for fiscal year 2005 is approximately $22.3 billion, and authorizes approximately 107,300 positions. See Def.'s Attach. 1, "Department of Justice Budget Authority and Positions, FY 1997 - FY 2006," which is found on the Department of Justice's website at: http://www.usdoj.gov/jmd/2006summary/pdf/05_BudgetAuthorityByPosition.pdf.
FDA's budget for fiscal year 2005 is approximately $1.8 billion, and authorizes approximately 10,779 employees. See Def.'s Attach. 2, FY 2005 Budget Summary (Pie Charts Showing FDA Budget), available at: http://www.fda.gov/oc/oms/ofm/budget/2005/BIB/2005pie.htm.

diligence.  See Appleton, 254 F. Supp. 2d at 10; see also Lisee v. CIA, 741 F. Supp. 988, 989 (D. D.C. 1990) (holding that agencies' processing of FOIA requests on a first-in, first-out basis satisfied the "exceptional circumstance" and "due diligence" requirements for stay).  Through these efforts, DIDP has been able to reduce the backlog of requests from 6,783 FOIA requests in August 2003 to its current level of approximately 4,800.  Def.'s Mot. at 11.  This decrease of approximately thirty percent in less than two years certainly demonstrates "due diligence" as described in Open America and Appleton.  Moreover, by reorganizing and increasing its staff and implementing an electronic document search system, DIDP not only has exercised "due diligence" in responding to the voluminous requests that it receives, but also has taken preemptive measures that will likely continue to reduce the backlog in the future.

       **4.**       **Compliance with 5 U.S.C. § 552(a)(6)(B) Is Not a Prerequisite for Issuance of an Open America Stay.**

       In an attempt to counter Defendant's showing of due diligence, Plaintiff argues that the "Defendant Is Not Entitled to a Stay Under The 'Unusual Circumstances' Exception in 5 U.S.C. § 552(a)(6)(B)."  Plaintiff's argument, however, is misplaced for a variety of reasons.  First, as Plaintiff is well-aware, the United States is not requesting a stay under "unusual circumstances" provision in 5 U.S.C. §552 (a)(6)(B) – nor can it.  Section 552 (a)(6)(B) is not a mechanism for obtaining a "stay" of anything, especially a judicial proceeding.  Rather, under its plain language, 5 U.S.C. § 552(a)(6)(B) merely establishes a process whereby, in "unusual circumstances," an agency can contact a FOIA requester in writing to request a limited extension of the twenty-day time limit for processing a request.  See Fisher v. FBI, 94 F. Supp. 2d, 213, 217 (D. D.C. 2000).

       Second, nothing in the FOIA or applicable case law suggests that agencies are required to seek extensions under 5 U.S.C. § 552(a)(6)(B).  Instead, the FOIA establishes quite clearly that,

if the agency does not comply with the response deadlines set forth in the FOIA, then a requester is deemed to have exhausted his administrative remedies and can therefore initiate a federal suit against the agency. 5 U.S.C. § 552(a)(6)(C). Thereafter, the United States can file a motion for an Open America stay consistent with 5 U.S.C. § 552(a)(6)(C). Thus, contrary to Plaintiff's rhetoric, non-compliance with FOIA processing deadlines is a fundamental aspect of all Open America cases, not a factor justifying denial of a stay. Indeed, in the absence of such non-compliance, there would be no need for an Open America stay in the first place.

Plaintiff argues that the Defendant's decision not to request an extension of time under 5 U.S.C. § 552(a)(6)(B) constitutes a failure to exercise due diligence in processing Plaintiff's request. Pl.'s Opp'n and Mot. at 9-11. Plaintiff, however, has pointed to no case in which an Open America stay was denied because an agency did not seek an extension from the requester under the provisions of 5 U.S.C. § 552 (a)(6)(B). In fact, a review of case law concerning Open America stays reveals that Open America cases generally involve situations like the present where a FOIA request has been placed in a queue upon receipt by the agency and the court's due diligence determination has nothing to do with whether the agency pursued an extension under 5 U.S.C. § 552(a)(6)(B). See Appleton, 254 F. Supp. 2d at 6-8; Edmond v. United States Atty., 959 F. Supp 1, 2 (D. D.C. 1997). Accordingly, Plaintiff's attempt to convolute the Court's due diligence analysis should be summarily rejected.[7]

---

[7] Moreover, if Congress wanted the issuance of an Open America stay under 5 U.S.C. § 552(a)(6)(C) to hinge upon the agency's pre-litigation pursuit of an extension under 5 U.S.C. § 552(a)(6)(B), then Congress could have said so in the text of 5 U.S.C. § 552(a)(6)(C). The fact that no such requirement was included in 5 U.S.C. § 552(a)(6)(C) clearly establishes that the United States is not required to pursue an extension under a 5 U.S.C. § 552(a)(6)(B) in order to obtain a stay under 5 U.S.C. § 552(a)(6)(C).

> B. **Plaintiff's Motion for Release of Non-Exempt Records Should be Denied Because Plaintiff Has Not Presented Any Urgent Reason Why Its Request Should Be Answered Before Other Requests in DIDP's Queue.**

Although submitted to the Court as a separate pleading, Plaintiff's motion for release of non-exempt records relies entirely on the brief that Plaintiff filed in opposition to Defendant's motion for an Open America stay. Since, as previously discussed, nothing in Plaintiff's opposition undercuts the Defendant's presentation of exceptional circumstances and due diligence, the only argument in Plaintiff's motion that warrants additional response is the assertion that its FOIA request should be permitted to leapfrog over other requests ahead of it in DIDP's queue pursuant to the "exceptional need or urgency" language of Open America, 547 F.2d at 615-16.

As explained in Defendant's motion for Open America stay, Def.'s Mot. at 17-18, an agency's request for stay may be denied where the requester demonstrates a genuine need and reason for urgency in gaining access to information prior out of turn. Open America, 547 F.2d at 615-616; Ohaegbu v. FBI, 936 F. Supp. 7, 8 (D. D.C. 1996). A plaintiff seeking to avoid the issuance of an Open America stay "bears the burden of showing a genuine need and reason for urgency in gaining access to Government records ahead of prior applicants for information." Edmond v. United States Attorney, 959 F. Supp. at 3 (citations and quotations omitted). The requisite urgency has been established in only a few cases. See, e.g., Cleaver v. Kelley, 427 F. Supp. 80, 81-82 (D. D.C. 1976) (expedited processing appropriate where documents were needed at plaintiff's upcoming criminal trial). Where the urgency has not been established, courts have repeatedly refused to permit claimants to leap to the front of agency queues. Edmond, 959 F. Supp. at 3 (holding that plaintiff's claim that documents were needed to help him overturn a criminal conviction did not "warrant prioritization of his request over others

11

which were filed earlier."); Ohaegbu v. FBI, 936 F. Supp. at 9 (noting that plaintiff must "wait his turn"); Schweihs v. FBI, 933 F. Supp. 179, 724 (N.D. Ill. 1996) (noting that plaintiff failed to state exceptional circumstances that warranted "vaulting" his request over other prior requests awaiting processing); Lisee v. CIA, 741 F. Supp. at 989 (finding no urgency where the requested information was needed to meet deadlines associated with writing and publishing a book). This rule makes sense: to rule otherwise would be to create an unwarranted incentive to sue the agency to gain a position more favorable than other, more patient, FOIA requesters.

Furthermore, pursuant to 5 U.S.C. § 552(a)(6)(E)(I), a FOIA request may receive expedited processing if the requester asks for such processing and demonstrates a compelling need. A compelling need exists when either: (1) a failure to obtain requested records on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or (2) the requester is a person primarily engaged in disseminating information and there is "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(I) and (II); 21 C.F.R. § 20.44. Neither of these grounds is satisfied here.

To support its "urgency" argument, Plaintiff relies upon two recent decisions that are readily distinguishable from the present dispute because they were found to concern matters of extraordinary public interest. Specifically, although Plaintiff aligns itself with Natural Resources Defense Counsel v. Department of Energy, 191 F. Supp. 2d 41 (D. D.C. 2002), that case concerned the release of records relating to an energy task force chaired by the Vice President of the United States and concerned a request for records that could allegedly implicate improper access to high government officials. Similarly, in Civil Liberties Union v. Department of Defense, 339 F. Supp. 2d 501 (S.D.N.Y. 2004), the court determined that expedited processing

12

under 5 U.S.C. § 552(a)(6)(E) was appropriate to force the Department of Defense to release documents pertaining to the government's treatment of individuals captured and held abroad. There is, however, no analogy here to the governmental, legislative, or personal liberty issues involved in those cases. While Defendant recognizes that the use of animals for testing and experimentation raises real issues and concerns that are more than trivial, Defendant is also cognizant of the fact that many FOIA requests in DIDP's queue seek information that is similarly important to requesters such as researchers, patients, consumer advocates, and companies seeking to develop new drugs and treatments.

Here, Plaintiff has shown no "urgent need" for the requested documents. To the contrary, Plaintiff's motion and supporting documents speculate that any potentially responsive documents may, at best, provide Plaintiff with information relevant to Plaintiff's long-term efforts to limit or eliminate certain types of animal testing. Although the requested information may ultimately be helpful to Plaintiff and its membership, this simply does not establish an urgent need for the documents.

Significantly, any claim of urgency at this time is plainly countered by the fact that Plaintiff never requested expedited processing of its FOIA request in accordance with 5 U.S.C. § 552(a)(6)(E)(v)(I) and (II) and 21 C.F.R. § 20.44. If receipt of the documents was truly urgent, then Plaintiff would certainly have requested expedited processing when it submitted its request. The fact that it did not speaks volumes.[8] Even if Plaintiff had requested expedited processing,

---

[8] Furthermore, because Plaintiff failed to seek expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(v)(I) and (II) and 21 C.F.R. § 20.44 when it submitted its FOIA claim, it should be precluded from doing so now. See Oglesby v. Dept. of Army, 920 F.2d 57, 65 (D.C. Cir. 1990) (noting that "foregoing an administrative appeal will preclude the requester from ever bringing suit on that request because the individual will not have exhausted his administrative remedies."); American Civil Liberties Union v. Department of Justice, 321 F. Supp. 2d 24, 28 (D. D.C. 2004) (noting that judicial review of agency decisions concerning expedited

13

however, nothing in the Plaintiff's papers suggests that expedited processing would be appropriate here because the Plaintiff has not established any urgency nor has it established that failure to obtain the requested documents will pose an imminent threat to the life or physical safety of an individual.  As such, there is no reason for the Court to allow Plaintiff to improperly leap to the front of DIDP's queue – effectively bypassing all requesters who properly submitted FOIA requests before Plaintiff – simply because Plaintiff has filed a lawsuit.  In the absence of any urgency, Plaintiff's place in the queue, and not its willingness to litigate, should determine when its request is processed.  See Open America, 547 F.2d at 615 (cautioning that permitting requesters who file suit to "automatically go to the head of the line" would result in a system where "the regulation of priorities in all agencies . . . would very shortly become the function of the courts.").

---

processing requests "is appropriate at either of two moments:  when the agency has denied a request for expedited processing, or when the agency has, upon administrative appeal, affirmed the denial of such a request").

### III. CONCLUSION

In view of the foregoing, and those arguments presented in Defendant's motion for an Open America stay, Defendant respectfully requests that an Order be issued staying all pending proceedings for ten (10) months or such further order as the Court may issue.[9] Furthermore, Plaintiff's motion for release of non-exempt records should be denied.

Respectfully submitted,

____/s/_____
KENNETH L. WAINSTEIN, DC BAR #451058
United States Attorney

___/s/_____
R. CRAIG LAWRENCE, DC BAR # 171538
Assistant United States Attorney

___/s/_____
HEATHER PHILLIPS, CA BAR # 191620
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W., Rm E4412
Washington, DC 20530
(202) 307-0258

OF COUNSEL:
PAULA M. STANNARD
Acting General Counsel
SHELDON T. BRADSHAW
Associate General Counsel, Food and Drug Division
ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation
MICHAEL SHANE
Associate Chief Counsel for Enforcement
Office of the General Counsel
U.S. Department of Health and Human Services
5600 Fishers Lane, GCF-1
Rockville, Maryland 20857

---

[9] A proposed Order was submitted with Defendant's motion.