**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **THE HUMANE SOCIETY OF THE** | ) |
| **UNITED STATES**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civ. No. 05-01089 (RMU) |
| | ) |
| **UNITED STATES DEPARTMENT OF** | ) |
| **HEALTH AND HUMAN SERVICES FOOD** | ) |
| **AND DRUG ADMINISTRATION,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RELEASE OF**
**NON-EXEMPT RECORDS**

**Introduction**

Plaintiff filed suit against the Federal Drug Administration ("FDA" or "Agency") based on the Agency's callous disregard of both the Freedom of Information Act's ("FOIA") mandatory deadlines and Congress' underlying intent that an agency either comply with the Act's deadlines or communicate with the requestor in order to effectuate a timely and efficient response. Only _after_ this suit was filed did the FDA claim that it was burdened to such a degree that it could not possibly respond to Plaintiff's request in a timely fashion, and only _after_ this case was filed did the Agency attempt to demonstrate due diligence in processing Plaintiff's FOIA request.

Indeed, Defendant flatly admits that the Agency made no attempt to comply with its statutory obligations _prior_ to this action being filed, and even goes so far as to suggest that these violations are completely irrelevant to the question of whether this Court should exercise its

1

equitable authority to grant even more time for the Agency to respond.  See Defendant's Opposition Memorandum ("Defs. Opp.") at 9-10.    Moreover, the FDA has conspicuously not represented that it will actually provide responsive records to the Plaintiff at the end of the requested ten month stay.  Rather, it has merely stated that it "estimates that it will be at least eight (8) months before Plaintiff's FOIA request . . . rises to the top of the complex queue, and that it will take at least two months thereafter to process the request . . . ."  Defendant's Motion for Stay ("Defs. Motion") at 14 (emphasis added).  Thus, the delay in this case is likely to run many months past the deadline suggested by the Defendant.

In addition, at the same time Defendant claims that its own flagrant violations of the FOIA's statutory mandates are entirely irrelevant to the question of whether a stay should be granted, it argues elsewhere in its brief that Plaintiff should be precluded from arguing for release of records now, because Plaintiff did not follow the procedure for expedited processing of a FOIA request before this litigation commenced.[1]  In effect, Defendant asks this Court to hold that a requestor's failure to seek an expedited response before litigation commences precludes that requestor from seeking the immediate release of documents in litigation, but that an agency's admitted failure to follow the FOIA's procedures for obtaining additional time to respond to a request before suit is filed has no effect whatsoever on an agency's ability to later ask the Court for additional time.  Plaintiff respectfully suggests that the Court should not allow the Agency to play such a transparent "heads I win, tails you lose" game with Congressionally granted public rights to government information.

---

1 Although Defendant characterizes such a release as "expedited," even an immediate release today would be more than a year and a half from the initial request.

At bottom, Defendant is asking the Court to interpret <u>Open America v. Watergate Special Prosecution Force</u>, 547 F.2d 605 (D.C. Cir. 1976) in such a way that it renders certain sections of the FOIA completely inoperative.  In essence, Defendant seeks a ruling that <u>Open America</u> allows an agency to willfully ignore the appropriate statutory procedures under 5 U.S.C. § 552(a)(6)(A) and (a)(6)(B) for obtaining more time to respond to a request, and yet still avail itself of an <u>Open America</u> stay if and when the agency is sued.  Such a ruling would not only vastly increase FOIA litigation by encouraging agencies to ignore FOIA requests until and unless the requestor has no choice but to initiate legal action – which is exactly what happened here – but would also render sections (a)(6)(A) and (a)(6)(B) of the FOIA a nullity, a result that is strongly disfavored.

**<u>Argument</u>**

**A.    <u>An Open America Stay Should Not Be Issued.</u>**

**1.  Defendant Has Not Demonstrated "Due Diligence," as Required Under <u>Open America.</u>**

In its opposition memorandum, Defendant does not deny that it made no effort whatsoever to comply with sections (a)(6)(A) and (a)(6)(B) of the FOIA in this case.  Thus, the Agency does not deny that it failed to respond to Plaintiff's initial request within twenty days as required by FOIA provision (a)(6)(A)(i), that it did not grant a ten day extension due to "unusual circumstances" pursuant to (a)(6)(B)(i), and that it did not make a timely determination with regard to Plaintiff's appeal pursuant to (a)(6)(A)(ii).  Nor does the Agency dispute the fact that these statutory violations deprived Plaintiff of its right to narrow or modify the scope of the request in order to move it into a faster processing track or to agree to an alternative time frame – as provided under (a)(6)(B)(ii) of the FOIA.

3

Instead, Defendant suggests that whether or not it complies with statutory deadlines has no bearing on whether or not the Agency has demonstrated "due diligence." See Defs. Opp. at 10. However, this argument is entirely without merit. In addressing the issue of due diligence during the 1996 FOIA Amendments, Congress stated that "[t]he bill would permit agencies to promulgate regulations starting multitrack processing systems, and makes clear that agencies should exercise due diligence within each track. Agencies would also be required to give requestors the opportunity to limit the scope of their requests to qualify for processing under a faster track." H.R. Rep. No. 104-795 at 23 (1996) (emphasis added).

However, in this case, there is no dispute that Defendant's failure to follow the statutory requirements of the FOIA deprived Plaintiff of this opportunity. Thus, far from being simply irrelevant to the question of whether a stay should be granted – as Defendant maintains – this failure led directly to the Agency's decision to assign Plaintiff's FOIA request to the "complex" track – an assignment which forms the factual basis for virtually all of Defendant's allegations concerning its alleged inability to process Plaintiff's request in a timely manner. Thus, contrary to Defendant's flippant suggestion, the Agency's failure to follow the procedures mandated by Congress has a direct bearing on the issues now before the Court – issues that might have been avoided entirely had Defendant carried out their statutory obligations in good faith. Under these circumstances, Defendant's actions simply cannot be characterized as "due diligence."[2]

---

[2] Nor is there any merit to Defendant's suggestion that Plaintiff is arguing that Open America is "no longer . . . valid legal authority . . ." Defs. Opp. at 7. In fact, Plaintiff does not dispute that Open America is valid authority. However, like Congress, Plaintiff is concerned that Open America is being used illegitimately to allow agencies to render certain sections of the FOIA inoperable, and is forcing requestors to go to the courthouse in order to figure out what has become of their request – as Plaintiff has had to do in this case – a result that does not serve the purposes of Congress, the Courts, the Agency, or the general public.

Moreover, to accept Defendant's interpretation of "due diligence" – i.e., that the Agency's pre-litigation failure to follow the dictates of the FOIA has no effect on whether the Agency has demonstrated "due diligence" under the FOIA – would render certain sections of the FOIA inoperable.

The FDA argues that whether or not it complies with the provisions set forth in 5 U.S.C. § 552(a)(6)(B) - which allows an agency to grant itself a ten day extension in "unusual circumstances," or requires an agency to notify a requestor to "limit the scope of the request so that it may be processed within that time limit" or "arrange with the agency an alternative time frame for processing the request" - does not indicate a lack of "due diligence." The Agency also offers the self-serving argument that "in the absence of such non-compliance, there would be no need for an Open America stay . . . ." Defs. Opp. at 10. This argument is not only incorrect – since an agency could in fact comply with section 552(a)(6)(B) prior to litigation and still seek an Open America stay later – but is also based on an interpretation of Open America that would render an entire section of the FOIA inoperable. Indeed, if this were the case, agencies would never even bother with seeking an extension or provide an opportunity for a requestor to narrow the request – which is apparently exactly the FDA's policy. Such a result is nonsensical on its face, and impossible to reconcile with this Circuit's precedent holding that "statutes should not be interpreted as to make a provision 'either superfluous or meaningless.'" Kelso v. U.S. Dept. of State, 13 F.Supp 2d 1, 10 (D.D.C. 1998) quoting Benavides v. DEA, 968 F.2d 1243, 1248 (D.C.Cir. 1992).

Nor could such an interpretation be reconciled with Congress' expressed intent in the 1996 FOIA Amendments "to ensure agency compliance with statutory time limits." H.R. Rep.

No. 104-795 at 2 (1996) <u>see</u> <u>also</u> <u>Gilmore v. U.S. Dept. of Energy</u>, 33 F. Supp. 2d 1184, 1187 (N.D. Cal. 1998) ("Allowing agencies more time to respond to FOIA requests thus appears to have been a policy decision by Congress to provide more realistic time limits in order to secure more widespread compliance with those time limits.").

As stated above, Congress amended the FOIA in 1996 to help bring agencies in compliance with FOIA timelines. However, allowing agencies to ignore the FOIA's mandates until sued is anathema to this precept, as it will increase Agency backlog, decrease Agency response, and will create a wave of FOIA litigation that will flood courtrooms across the country. Any doubt about whether Congress sought to avoid this result is resolved by the fact that Congress specifically raised this issue when discussing the 1996 FOIA Amendments, stating that agencies were "<u>[r]elying upon overly broad dictum in this case [Open America]</u>," and "have employed the exceptional circumstances-due diligence exception to obtain judicial approval for lengthy delays whenever they have a backlog." H.R. Rep. No. 104-795 at 14 (1996). Indeed, Congress expressly stated that "[b]acklogs of requests for records under the FOIA should not give agencies an automatic excuse to ignore the time limits." <u>Id.</u> Notably, Congress did <u>not</u> make a distinction between the timelines set out in the FOIA, whether it be in 5 U.S.C. § 552(a)(6)(A) or (a)(6)(B). Accordingly, the stay sought by the Defendant is not consistent with either the plain language of the FOIA, or Congress' intent in enacting the 1996 FOIA Amendments.

**2.      The Court Should Decline To Exercise Its Discretion To Issue a Stay**.

Even if the Court finds that the government has shown "due diligence," the Court is not required to grant a stay. Thus, despite Defendant's indignant suggestion that the Agency is

somehow entitled to an <u>Open America</u> stay as a matter of course,[3] section 552(a)(6)(C)(i) of the FOIA merely states that when "exceptional circumstances" and "due diligence" exist, "the court <u>may</u> retain jurisdiction and allow the agency additional time to complete its review of the records." <u>Id.</u> (emphasis added); <u>see also</u> <u>Ferguson v. FBI</u>, 722 F. Supp. 1137, 1140 (S.D.N.Y. 1989) ("FOIA does not require district courts to grant extensions upon a showing of 'due diligence' and 'exceptional circumstances' . . . ."). Thus, whether to grant a stay in this case is an equitable question, which should be guided by the Court's broad discretion in this area. <u>See</u> <u>Reid ex. rel. Reid v. District of Columbia</u>, 401 F.3d 516, 523-524 (D.C. Cir. 2005) ("'[t]he essence of equity jurisdiction' is 'to do equity and to mould each decree to the necessities of the particular case.'") quoting <u>Hecht Co. v. Bowles</u>, 321 U.S. 321, 329 (1944).

In this case, even if the Court finds that "exceptional circumstances" and "due diligence" exist, the stay requested by Defendant should be withheld because it would be decidedly inequitable, contrary to the intent of Congress, and harmful to the interests of the public, the courts, and the millions of Botox users throughout the United States that remain entirely in the dark about the manner by which this product is brought to market.

As described in Plaintiff's previous memorandum, Plaintiff submitted its initial FOIA request on April 9, 2005. After waiting more than three months with no meaningful response, and no indication that Defendant was processing Plaintiff's request, a second request was made on July 26, 2004. The follow-up request was sent in order to clarify the language of the first request and to invite the Agency to contact The HSUS if it had any questions. Plaintiff received no response whatsoever from the Agency to this request. Furthermore, the Agency made no

---

3 <u>See</u> Defs. Memo at 6. (referring repeatedly to "Defendant's <u>entitlement</u> to an <u>Open America</u>

effort to contact Plaintiff either to modify or narrow the scope of the request or to find a mutually agreeable alternative response time, as required by the FOIA. After waiting nine months, Plaintiff filed an administrative appeal on April 28, 2005. Again, the Agency made no effort to contact the Plaintiff or to fulfill the request. After yet another period with no contact from the Agency, Plaintiff filed this suit on June 2, 2005.

Despite this pattern of non-responsiveness and a lack of cooperation, the Agency is now asking to be rewarded with an additional delay. However, Defendant should not be afforded equitable relief when they are unwilling to proceed in an equitable fashion. See Cent. States, Southeast and Southwest Areas Pension Fund v. Slotky, 956 F.2d 1369, 1377 (7th Cir. 1992) ("He who wants equity must do equity.")

To be sure, a number of cases cited by Defendant appear to have issued Open America stays as a matter of course and without extensive discussion. See Plfs. Mem. at 13. However, each case has its own facts, and given the facts presented here, it is clearly inequitable and contrary to the intent of the statute to issue a stay. At best, the Agency is seeking to be rewarded for its own recalcitrance in the face of its statutory duties under the FOIA. At worse, the Agency is trying to take advantage of precedents providing legitimate stays to justify its complete disregard of the FOIA until it was sued. Such a result could hardly be more inequitable. If the FDA's interpretation of Open America is adopted, requestors will have to sue merely to determine what has become of their request – as was the case here. This will result in a flood of new FOIA suits, and indeed may be a significant factor in the current number of FOIA cases pending before the Court.

---

stay.") (emphasis added).

Furthermore, entry of the requested stay would be a declaration that agencies need not respect any of the statutory obligations under the FOIA.  Under the FDA's interpretation of the FOIA, they are in a no-lose situation.  Defendant does not have to meet any of its statutory obligations for a requestor and can simply wait to see if the requestor files suit.  If a requestor does file a lawsuit, the Agency will seek a stay under <u>Open America</u>.  If the Agency wins, it receives an extension and can fill the request whenever the court determines is appropriate.  If the Agency does not receive the desired stay, it has to turn over documents, which it was required to do in the first place.  Thus, the mere act of doing nothing until sued and then seeking a stay, in effect, gives the Agency an indefinite extension – something Congress specifically sought to avoid with the 1996 FOIA Amendments.  <u>See</u> H.R. Rep. No. 104-795 (1996).

**B.  <u>The Court Should Order FDA To Release Non-Exempt Documents.</u>**

As discussed in Plaintiff's previous memorandum, even if an <u>Open America</u> stay were otherwise appropriate, the "equities weigh in favor of moving Plaintiff's request to the front of the line" as there is substantial public interest in the documents at issue because "they are necessary to fulfill essential Congressional and administrative mandates to reduce, refine and replace animal testing."  Plfs. Mem. at 16.  Defendant does not seriously refute The HSUS's efforts in this regard, nor does it dispute the necessity of obtaining the requested information to further this Congressional mandate.  Instead, Defendant essentially argues that this interest is not sufficient because it "may ultimately be useful to Plaintiff and help Plaintiff to pursue its organizational goals . . . ."  Defs. Motion at 18.  Defendant seems to argue that because it views The HSUS request as merely fulfilling a long term goal, Plaintiff is not entitled to be moved to the front of the line.  However, through its utter disregard for statutory timelines, the Agency has

imposed a decidedly long term delay. Moreover, the Agency is in no position to second guess the wisdom of fulfilling Congress's stated goal of reducing, refining, and replacing animal testing. See 7 U.S.C. § 2131 *et. seq.*

Defendant's only other response on this issue is the disingenuous suggestion that Plaintiff should be precluded from arguing for release of records now, because Plaintiff did not follow the procedure for expedited processing of a FOIA request before this litigation commenced. In effect, Defendant claims that a requestor's failure to ask for an expedited response before litigation commences precludes that requestor from advancing any such argument in litigation, while at the same time arguing that its own flagrant violations of the FOIA's statutory mandates are entirely irrelevant. As discussed above, this argument is nonsensical on its face. Cf. Public Citizen v. Heckler, 653 F. Supp. 1229, 1237 (D.D.C. 1987) ("[f]or an agency to say one thing . . . and do another . . . is the essence of arbitrary action." (internal citations omitted)); Wagner v. Prof'l Eng'rs in California Gov't, 354 F.3d 1036, 1044 (9th Cir. 2004) (Litigants are prevented from "playing fast and loose with the courts" by "gaining an advantage by taking one position and then seeking a second advantage by taking an incompatible position.").

Moreover, the Agency's argument on this score is entirely self-defeating. Essentially, the Agency is advocating a system wherein every requestor would ask for expedited processing in their initial request lest they waive any chance to oppose a lengthy Open America stay down the road. Such a result will only increase the backlog of requests the Agency is facing - as it would cut the Agency's response time from twenty days under a normal request to ten days, 5 U.S.C. §

553(a)(6)(E)(ii)(I) - and further exacerbate the FDA's already significantly flawed FOIA

response procedures.[4]

## <u>Conclusion</u>

For the reasons presented above, and in Plaintiff's previous memorandum, Plaintiff

respectfully requests that the Court order the release of all non-exempt records.

Respectfully submitted,

_____

Peter J. Petersan
(D.C. Bar No. 487605)
Jonathan R. Lovvorn
(D.C. Bar No. 461163)
The Humane Society of the United States
2100 L. St., N.W.
Washington, D.C. 20037
(202) 955.3665

Date: October 7, 2005

_____

4  Furthermore, Defendant's argument that Plaintiff cannot now seek a release of non-exempt
documents is impossible to reconcile with <u>Natural Res. Def. Council v. Dep't of Energy</u>, wherein
this Court granted an "Expedited Motion for Release of Responsive Records and for a Vaughn
Index" where an initial request for expedited processing had not been made.  191 F. Supp. 2d 41
(D.D.C. 2002).